USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/31/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
INFORMED CONSENT ACTION NETWORK
and THE INSTITUTE OF AUTISM SCIENCE,

                                **Plaintiffs,**

                v.

**XAVIER BECERRA,** in his capacity as the Secretary of
the United States Department of Health and Human
Services,

                               **Defendant.**
------------------------------------------------------------------- x

1:21-CV-4134-ALC

<u>OPINION AND ORDER</u>

**ANDREW L. CARTER, JR., United States District Judge:**

      This is an action brought by two not-for-profit organizations seeking an injunction ordering the Secretary of the United States Department of Health and Human Services, Xavier Becerra, to remove a webpage with the heading "Vaccines Do Not Cause Autism" from the Centers for Disease Control and Prevention website. Before the Court is the HHS Secretary's motion to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendant's motion to dismiss is **GRANTED** because Plaintiffs lack constitutional standing to bring this suit.

### I. FACTUAL BACKGROUND[1]

#### A. The Parties

      Plaintiff Informed Consent Action Network ("ICAN") is a not-for-profit organization with a mission of "improving vaccine safety" through activities such as "investigating and

---

[1] The facts are taken from Plaintiffs' Complaint filed on May 7, 2021. *See* ECF No. 1. At the motion to dismiss stage, courts accept as true all well-pleaded allegations in the complaint and draws all reasonable inferences in Plaintiffs' favor. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

disseminating information underpinning the scientific support for the safety of childhood vaccines in order to address any gaps and strengthen the safety profile of the childhood vaccine schedule." Compl. ¶ 3, 23. Plaintiff Institute for Autism Science ("IAS") is a not-for-profit organization that supports families of children with autism spectrum disorder ("autism") and "support[s] research to identify the causes of autism in order to better understand how to treat and prevent autism." Compl. ¶¶ 3, 23. Defendant is the Secretary (the "Secretary") of the U.S. Department of Health and Human Services ("HHS"), an Executive Branch agency. Compl. ¶ 24.

### B. The National Childhood Vaccine Injury Act of 1986

Under Part 2 of the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act") (42 U.S.C. § 300aa-1, *et seq.*), Congress established the National Vaccine Injury Compensation Program, to be administered by the Secretary, "under which compensation may be paid for a vaccine-related injury or death." 42 U.S.C. § 300aa-10(a).[2] Congress passed the Vaccine Act "[t]o stabilize the vaccine market and facilitate compensation" by "establish[ing] a no-fault compensation program 'designed to work faster and with greater ease than the civil tort system.'" *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228, 131 S. Ct. 1068, 1073, 179 L. Ed. 2d 1 (2011) (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995)). An aggrieved party may file a petition against the Secretary with the United States Court of Federal Claims, which will determine whether the petitioner is entitled to compensation for a vaccine-related injury or death and may seek review of an unfavorable final decision before the United States Court of Appeals for the Federal Circuit. 42 U.S.C. § 300aa-11(a), § 300aa-12(a),

---

[2] Though not applicable to the case at hand, for background purposes, Part 1 of the Vaccine Act governs the separate and distinct National Vaccine Program, which is designed "to achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines." 42 U.S.C. § 300aa-1.

§ 300aa-12(e)-(f). After judgment is entered by the Court of Federal Claims or the Court of Appeals, "a claimant has two options: to accept the court's judgment and forgo a traditional tort suit for damages, or to reject the judgment and seek tort relief from the vaccine manufacturer." *Bruesewitz*, 562 U.S. at 228, 131 S.Ct. at 1073, 179 L.Ed.2d 1 (2011) (citing 42 U.S.C. § 300aa-21(a)).

Pursuant to Subpart C of Part 2 of the Vaccine Act entitled "Assuring a Safer Childhood Vaccination Program in United States," Section 300aa-27 states that the Secretary shall, among other things,

> **(1)** promote the development of childhood vaccines that result in fewer and less serious adverse reactions than those vaccines on the market on December 22, 1987, and promote the refinement of such vaccines, and
>
> **(2)** make or assure improvements in, and otherwise use the authorities of the Secretary with respect to, the licensing, manufacturing, processing, testing, labeling, warning, use instructions, distribution, storage, administration, field surveillance, adverse reaction reporting, and recall of reactogenic lots or batches, of vaccines, and research on vaccines, in order to reduce the risks of adverse reactions to vaccines.

42 U.S.C. § 300aa-27(a).

Subpart D of Part 2 of the Vaccine Act contains a citizen suit provision, which authorizes "any person [to] commence in a district court of the United States a civil action on such person's own behalf against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under [Part 2]" so long as the action is commenced within 60 days after the person "has given written notice of intent to commence such action to the Secretary." 42 U.S.C. § 300aa-31(a)-(b).

### C. The "Vaccines Do Not Cause Autism" Statement on the Centers for Disease Control and Prevention Website (the "CDC Statement")

The heading "Vaccines Do Not Cause Autism" (the "CDC Statement") appears as the main heading on the Centers for Disease Control and Prevention ("CDC") website section on "Vaccine Safety" and subsection on "Common Concerns." Compl. ¶ 5.[3]



*See* Compl. ¶ 5. For the past four decades, federal health authorities have taken the position that "studies establish that vaccines do not cause autism." Compl. ¶ 4. The Center for Disease Control and Prevention (CDC) asserts this claim—"Vaccines Do Not Cause Autism"—on its website. Compl. ¶ 5. Plaintiffs allege that there are peer-reviewed articles that seem to contest this claim, which indicate that "a majority of parents of children with autism have reported and continue to report one or more vaccines, including DTaP, Hepatitis B, Hib, PCV13, and IPV, as a cause of their child's autism." Compl. ¶ 6.

On October 12, 2017, ICAN sent a demand to the then-serving Secretary of HHS contending that there were no published studies demonstrating that certain vaccines, including for

---

[3] The Court takes judicial notice of the webpage containing the CDC Statement. Located at https://www.cdc.gov/vaccinesafety/concerns/autism.html. It appears that the current webpage modified the title of "Common Concerns" subsection to "Questions and Concerns." Courts may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Hepatitis A and B, Varicella, flu, and other illnesses, do not cause autism. The demand requested that the Secretary "confirm that HHS shall forthwith remove the claim that 'Vaccines Do Not Cause Autism' from the CDC website, or alternatively, please identify the specific studies on which HHS bases its blanket claim that no vaccines cause autism." Compl. ¶¶ 11, 65. Plaintiffs allege that, even after numerous follow-ups, the Secretary had not identified any studies in support of the CDC Statement.

On June 21, 2019, Plaintiffs made Freedom of Information Act (FOIA) requests for the CDC to provide studies it relied upon for its claim about the vaccine-autism connection with respect to babies. Ultimately, by stipulation entered on March 2, 2020, the CDC identified "a total of 16 studies and 4 reviews," but Plaintiffs allege that "[n]ot one of these studies or reviews supports the claim that vaccines injected into babies – DtaP, Hep B, Hib, PCV13, and IPV – do not cause autism." Compl. ¶ 14. At least one of the studies provided, prepared by the Institute of Medicine (IOM), found an "association" between DTaP and autism. Compl. ¶ 15. On two more occasions—on or about March 10 and March 27, 2020—Plaintiffs submitted additional FOIA requests for the same information. Both times the CDC responded by pointing them to the previously submitted list of twenty studies. Compl. ¶ 16.

On August 27, 2020, Plaintiffs state that the CDC "finally removed" the "Vaccines Do Not Cause Autism" claim from its website and, after ICAN "widely publicized" the removal of the statement, the CDC restored the statement to its website. Compl. ¶¶ 18, 84-85. Plaintiffs express concern that the CDC Statement has negative implications for children with autism and children expected to be diagnosed with autism because the causal link between vaccines and autism "should be determined through scientific inquiry." Compl. ¶ 19. They aver that until the CDC removes the statement, "the necessary scientific inquiries will never receive the funding or the attention they

5

deserve." Compl. ¶ 19. Plaintiffs further claim that the refusal of the Secretary to conduct research while asserting on the CDC website that there is no causal link between vaccines and autism for babies is a violation of his statutory duties. Compl. ¶ 20.

The Complaint alleges that the CDC Statement harms Plaintiffs and its members. Compl. ¶¶ 88-107. Plaintiffs request declaratory relief, stating that the HHS Secretary has violated his statutory duties under 42 U.S.C. § 300aa-26 and 42 U.S.C. § 300aa-27 by posting "Vaccines Do Not Cause Autism" on the CDC website without scientific literature in support of that claim with respect to babies. They also seek an order that the Secretary, and the agencies within his control such as the CDC and the National Institutes of Health (NIH), remove the vaccine-autism claim from their websites until the Secretary can demonstrate to the Court that "the Secretary possesses scientific studies that specifically support that the vaccines given to babies (*i.e.*, under one year of age) do not cause autism. Compl. ¶ 21.

## II. PROCEDURAL HISTORY

Plaintiffs commenced this action on May 7, 2021. ECF No. 1. Defendant filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under 12(b)(6) on August 19, 2021. ECF No. 13. Plaintiffs responded in a joint opposition brief on September 20, 2021. ECF No. 17. On October 12, 2021, Defendant filed a reply. ECF No. 21. The Court deems this motion fully briefed. No oral argument is needed.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings

inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### B. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### IV. DISCUSSION

A party must have Article III standing—"the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 55 (2d Cir. 2016) (*citing Davis v. FEC*, 554 U.S. 724, 732 (2008)). A standing issue may be raised at any stage in a litigation, *see id.* (*citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "the party

7

invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Under the U.S. Constitution, the jurisdiction of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 156 (2014) (*quoting Lujan*, 504 U.S. at 560). When a plaintiff seeks injunctive relief, plaintiff must show that "[s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)) (internal quotation marks omitted). "[A]bstract injury is not enough; rather the threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (internal quotation marks omitted).

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R.Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560-61). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues . . . . [t]his inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F. 3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must

8

construe the complaint in favor of the complaining party.'" *United States v. Vasquez*, 143 F. 3d 74, 81 (2d Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

Plaintiffs must allege "injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021). The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 2204-07 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S.Ct. 1540 (2016). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Our sister courts, including the D.C. Circuit Court of Appeals, have required that plaintiffs suing under the Vaccine Act establish constitutional standing. *See, e.g.*, *Coal. for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 9 (D.D.C. 2010), *aff'd,* 671 F.3d 1275 (D.C. Cir. 2012); *see also cf. McDowell v. Sullivan*, 132 F.R.D. 501, 504 (N.D. Ill. 1990).

An advocacy or non-profit organization suing in federal court may establish standing either by demonstrating organizational standing or associational standing. Organizations can "have standing in [their] own right to seek judicial relief from injury to [themselves] and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). But "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 281, 106 S. Ct. 2523, 2528, 91 L. Ed. 2d 228 (1986) (collecting cases). Elaborating on principles of standing in the seminal organizational standing case, *Warth,* 422 U.S., 95 S.Ct., 45 L.Ed.2d, the Supreme Court articulated a three-part test to determine whether a litigant has established associational standing:

> "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Int'l Union* 477 U.S. at 282, 106 S. Ct. at 2529, 91 L.Ed.2d 228 (1986) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

Plaintiffs here assert both bases for standing to sue in federal court—that is, they individually, and in their representative capacities, suffered Article III injury. Plaintiffs contend that they have organizational standing to sue based on frustration of mission.[4] The Supreme Court has clearly articulated that advocacy organizations can establish Article III injury upon a showing that the organization was "perceptibly impaired" by the challenged conduct. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). "An organization may suffer the requisite injury when it [1] 'diverts its resources away from its [other] current activities,' or [2] otherwise incurs 'some perceptible opportunity cost.'" *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021) (footnote omitted).

This Court is bound by controlling Second Circuit decisions regarding advocacy groups alleging organizational standing. In *Centro la Comunidad Hispana de Locust Valley v. Town of*

---

[4] The Complaint avers that social media organizations "fact-checked" ICAN after making public posts about the lack of vaccine-autism studies. Compl. ¶ 96. The "fact-check" eventually led to ICAN "being removed from various social media platforms" and "diminished ICAN's ability to carry out its mission of identifying research gaps and promoting additional research to fill these gaps." Compl. ¶ 97. Considering Plaintiffs do not defend any reputational harm in their opposition briefs and Defendant directly challenges the plausibility of this harm, *see* Def.'s Mem. at 11-12, the Court deems this theory of standing abandoned. "When a party fails adequately to present arguments," including in an opposition brief, courts may "consider those arguments abandoned." *Malik v. City of New York*, 841 Fed.Appx. 281, 284 (2d Cir. 2021) (summary order) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)). This is especially true "in the case of a counseled party" where "a court may . . . infer from a party's partial opposition that relevant claims and defenses that are not defended have been abandoned." *Id.* (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)).

*Oyster Bay ("Centro")*, 868 F.3d 104 (2d Cir. 2017), the Second Circuit held that a plaintiff labor organization, whose routine advocacy work consisted of finding and organizing day laborers, adequately alleged a perceptible impairment to its mission. The organization pleaded injury resulting from a local ordinance that prohibited laborers from gathering and soliciting work in different locations in town. The Second Circuit held that the advocacy group had adequately pleaded injury because it had to divert resources from its other current activities to address the "increased difficulty in meeting with and organizing those laborers." *Id.* at 110.

In *Moya*, Youth Ministries for Peace and Justice, Inc. ("YPMJ"), a nonprofit organization that supports applicants seeking naturalization, alleged that the U.S. Department of Homeland Security routinely violated its policies and practices in processing disability waivers from civics and English testing requirements for citizenship applicants (the "N-648 waiver"). To plead constitutional injury, YPMJ alleged that their DOJ-accredited representative, specifically hired to assist immigrants with naturalization applications, spent more than twice the amount of time preparing N-648 waiver forms than other applications, and that, when rejected, N-648 waivers required the representative to perform additional work, including coordination with doctors, to revise the rejected applications. They claimed that "these policies force[d] the representative to spend more time with disabled clients and less time with everyone else," which made them divert significant time and resources away from their primary mission. Applying the principles from *Centro*, the Court of Appeals held that YPMJ had adequately alleged a "perceptible impairment" to its organizational interests that were "concrete and particularized." *Moya* at 129-30.

Applying the principles from *Centro* and *Moya* to this case, Plaintiffs have properly pleaded perceptible impairment of their mission. Taking the allegations in the Complaint as true, Plaintiffs state that they have, and continue to, divert significant time and resources from other

organizational efforts to investigate, identify, and expose the lack of scientific support. Based on some studies reporting that many parents believe that one or more vaccines caused their child to develop autism, since 2017, Plaintiffs have raised concerns about insufficient support for the CDC Statement with HHS and its subagencies about the need for additional research. For example, Plaintiffs have participated in lengthy email correspondence with HHS, submitted several FOIA requests seeking studies relied upon by HHS, and held face-to-face meetings with agency officials. Given this early pleading stage, the Court concludes that ICAN has sufficiently alleged concrete and particularized organizational injury.

"The causation component of the Article III standing test insures that the injury alleged by a plaintiff is attributable to the defendant." *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993) (citation omitted). "The plaintiff's injury . . . must be fairly traceable to the allegedly illegal government conduct." *Id*. Though Plaintiffs have adequately alleged direct organizational injury, they have failed to plead that it is fairly traceable to the challenged government conduct and would be redressed by the prospective injunctive relief sought. Defendant's argument in chief is that the Complaint is too speculative, surmising that removal of the CDC Statement would somehow coerce independent researchers, none of whom are parties to this lawsuit, to begin studying and publishing research on the vaccine-autism connection for babies. The Court agrees.

Plaintiffs' causation theory is purely speculative and conjectural. The Complaint alleges that the CDC Statement chills research on whether certain vaccines cause autism in babies. As pleaded, it is not plausible that HHS, as opposed to the greater research community as a whole, is the source of the lack of vaccine-autism research. For instance, Plaintiffs have not proffered facts to demonstrate that the alleged lack of research is not just explained by the fact that there is scientific consensus that vaccines do not cause autism, that there is currently scientific consensus

to prioritize other areas of vaccine research, or even that there is currently greater emphasis in the scientific community on areas of biomedical research other than vaccines. Here, the Complaint fails to allege that Plaintiffs' injury does not result "from the independent action of some third party not before the court." *See Allen v. Wright*, 468 U.S. 737, 757, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984); *Garelick*, 987 F.2d at 919 ("Here, as in *Allen*, there is a crucial 'missing link' in the chain of events allegedly giving rise to plaintiffs' injuries."). Because there is a missing link in the causal chain between the organizational injury and the challenged government conduct, Plaintiffs lack standing to sue.

Even though the Court need not tread further in its analysis, out of an abundance of caution, the Court also holds that Plaintiffs fail to meet the final redressability prong. It would be pure speculation for this Court to reason that removing the CDC Statement would prevent Plaintiffs from diverting time and resources to expanding scientific literature on the vaccine-autism link for babies, especially if the scientific consensus is to focus research priorities elsewhere.[5] Plaintiffs' alleged injury would only be remedied *if* HHS removed the CDC Statement and *if* researchers refrained from citing or referencing the CDC Statement and *if* researchers began to study the vaccine-autism link for babies and *if* the researchers published their research findings so that eventually Plaintiffs could investigate their findings and disseminate them.[6] Plaintiff has not proffered facts sufficient to plead or prove that any researchers are eager to study the specific vaccine-related issues they would like, should the prospective injunctive relief be granted. "Even if [this Court]" granted the requested relief "there is no basis . . . to conclude that petitioners would

---

[5] Plaintiffs allege that researchers will not accept their "support" to conduct research on the cases of autism. Compl. ¶¶ 103-04.
[6] Indeed, the Complaint asserts that there was a brief period where the CDC had taken the claim down, and ICAN widely publicized the removal. Though the CDC ultimately restored the claim to its webpage, Plaintiffs do not plead that any shift in research priorities by the scientific community occurred during that time.

more likely than not be in any different position than they are now." *Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008). Plaintiffs state in their opposition brief that "convincing researchers to study the issue is a problem for another day," *see* Pl.'s Opp. at 15, but Article III does not permit standing where the relief sought would not redress the alleged harm.

Plaintiffs also argue that they have associational standing on behalf of pediatrician members, such as Dr. Robert Sears.[7] The Court holds that Plaintiffs have failed to adequately plead that these members have suffered concrete and particularized injury.[8] Here, Plaintiffs allege that their pediatrician members, including Dr. Sears, are harmed by the CDC Statement because there is no research available for them to rely on to advise parents "regarding the risk of autism from vaccination for their babies." Compl. ¶ 99. Taking the allegations as true, Plaintiffs have failed to plausibly demonstrate how or why the worries of its pediatrician members are not mere generalized grievances of the medical community. Plaintiffs proffer no explanation in the Complaint or their opposition brief substantiating how Dr. Sears' and other pediatrician members' concerns about the alleged lack of vaccine-autism research are particularized. *See Coal. for Mercury-Free*, 725 F. Supp. 2d at 16, *aff'd,* 671 F.3d 1275 (D.C. Cir. 2012) (concluding that organization bringing action under citizen suit provision of Vaccine Act failed to plead reputational harm to medical professional members because "th[e] theory offer[ed] nothing more than a generalized grievance on behalf of the medical community") (citing and quoting *Lujan*, 504 U.S. at 575-76, 112 S.Ct. 2130). "[A] generally available grievance about government" is insufficient to confer Article III

---

[7] To be clear, ICAN and IAS are the only plaintiffs in this case. There are no individual plaintiffs.
[8] The Complaint seems to allege that Plaintiffs can plead standing on behalf of parent members, such as the McDowells, whose children had an adverse reaction to a vaccine during the first year of life and developed autism. Compl. ¶¶ 100-102. Defendant dedicated several pages of its opening brief to arguing that this specific theory of associational standing fails because causation and redressability are wholly speculative. Def.'s Mem. at 10-12. More specifically, Defendant asserts that the theory improperly speculates that third parties like researchers will somehow begin studying the vaccine-autism connection related to babies if the CDC Statement is removed from its website. *Id.* Plaintiffs fail to defend this theory of standing in their opposing papers. The Court deems the theory abandoned.

standing. *Lance v. Coffman*, 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Because none of Plaintiffs' standing theories satisfy the Article III case-or-controversy requirement, this Court must dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1). The Court need not reach Defendant's arguments on the merits of the alleged statutory violation under 12(b)(6).

## V. CONCLUSION

This case is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Accordingly, the Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated**: March 31, 2022
New York, New York

_____
**The Hon. Andrew L. Carter, Jr.**
**United States District Judge**